IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**JOE LUIS ARMIJO, JR.,**

      **Plaintiff,**

vs.                                                                      Civ. No. 24-749 MIS/JFR

**LELAND DUDEK, Acting Commissioner,**
**Social Security Administration,**

      **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 12)[2] filed September 20, 2024, in connection with Plaintiff's *Motion for Judgment on the Pleadings,* filed October 21, 2024. Doc. 14. On January 17, 2025, Defendant filed a Response. Doc. 21. On February 28, 2025, Plaintiff filed a Notice of Completion of Briefing. Doc. 23. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds that Plaintiff's Motion is not well taken and recommends that it be **DENIED**.

### I. Background and Procedural Record

Plaintiff Joe Luis Armijo, Jr. ("Mr. Armijo") alleges he became disabled on October 27, 2015, at the age of forty-three years and four months, because of high blood pressure,

---

[1] On November 12, 2024, United States District Judge Margaret I. Strickland entered an Order of Reference referring this case to the undersigned to the Court an ultimate disposition of the case. Doc. 15.

[2] Hereinafter, the Court's citations to Administrative Record (Doc.12), which is before the Court as a transcript of the administrative proceedings, are designated as "Tr."

depression, anxiety, hip arthritis, osteoarthritis, declining eyesight, bleeding ulcers, and Hepatitis-C. Tr. 220, 235. Mr. Armijo completed his GED in 2005 and has worked as a caregiver, cashier, courtesy clerk, mine worker, order puller, and in security. Tr. 223-32, 236, 242-44, 272-77. Mr. Armijo stopped working because of his medical conditions. Tr. 235.

On November 16, 2021, Mr. Armijo filed an application for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 et seq. Tr. 194-201. Mr. Armijo's application was denied on February 24, 2022. Tr. 69-76, 77, 101-04. It was denied again at reconsideration on December 8, 2022. Doc. 78-98, 99, 114-18. Mr. Armijo requested a hearing before an Administrative Law Judge ("ALJ"), which was held on November 1, 2023. Tr. 120, 33-68. Mr. Armijo appeared before ALJ Talia Timmins with his attorney representative Gary Martone.[3] *Id.* On January 17, 2024, ALJ Timmins issued an unfavorable decision. Tr. 11-27. On May 22, 2024, the Appeals Council issued its decision denying Mr. Armijo's request for review and upholding the ALJ's final decision. Tr. 1-6. On July 23, 2024, Mr. Armijo timely filed a Complaint seeking judicial review of the Commissioner's final decision. Doc. 1.

## II. Applicable Law

### A. Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the

---

[3] Mr. Armijo is represented in these proceedings by Attorney Bryan Konoski. Doc. 1.

familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

> (1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[4]  If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.
>
> (2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s).  If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, he is not disabled.
>
> (3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement.  If so, a claimant is presumed disabled.
>
> (4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work."  Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work.  Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands.  A claimant who is capable of returning to past relevant work is not disabled.
>
> (5) If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience.  If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. §§ 404.1520(a)(4) (disability insurance benefits) and 416.920(a)(4) (supplemental security income); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v.*

---

[4] Substantial work activity is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a).  "Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before."  *Id.*  "Gainful work activity is work activity that you do for pay or profit."  20 C.F.R. §§ 404.1572(b).

3

*Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  The claimant has the initial burden of establishing a disability in the first four steps of this analysis.  *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n.5, 96 L.Ed.2d 119 (1987).  The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy.  *Id.*  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

  **B.** <u>**Standard of Review**</u>

  The Court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).  A decision is based on substantial evidence where it is supported by "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118.  A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley,* 373 F.3d at 1118, or if it "constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity."  *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  Further, the decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).  In undertaking

its review, the Court may not "reweigh the evidence" or substitute its judgment for that of the agency. *Langley*, 373 F.3d at 1118.

### III. **Analysis**

The ALJ determined that Mr. Armijo had not engaged in substantial gainful activity since November 2, 2021, the date of his application. Tr. 16. She found that Mr. Armijo had severe impairments of degenerative joint disease of the left hip, hypertension, and cardiomyopathy. *Id.* The ALJ found that Mr. Armijo's hypermetropia, presbyopia, obesity, depression, and general anxiety disorder were non-severe. Tr. 16-17. The ALJ determined that Mr. Armijo's impairments did not meet or equal in severity any of the listings described in the governing regulations, 20 CFR Part 404, Subpart P, Appendix 1. Tr. 18-19. Accordingly, the ALJ proceeded to step four and found that Mr. Armijo had the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except

> he is limited to standing and walking a total of 4 hours in an 8-hour workday. He can occasionally climb ladders, ropes or scaffolds, ramps, and stairs, kneel, crouch, crawl, stoop and balance, as defined by the Selected Characteristics of Occupations (SCO). The claimant can never work in the presence of moving machinery with fast moving parts or at high exposed places.

Tr. 19-24. The ALJ determined that Mr. Armijo was unable to perform his past relevant work, but considering his age, education, work experience, and residual functional capacity, through the date last insured there were jobs that existed in significant numbers in the national economy Mr. Armijo could perform.[5] Tr. 25-26. The ALJ determined, therefore, that Mr. Armijo was not disabled. Tr. 27.

---

[5] The VE expert identified representative occupations of Cashier II (DOT 211.462-010) light exertion, SVP 2, with approximately 260,000 positions in the nation when accommodating walking/standing limitation; Marker (DOT 209.587-034) light exertion SVP 2, with approximately 70,000 positions in the nation when accommodating walking/standing limitation; and Office Helper (DOT 344.677-014) light exertion, SVP 2, with approximately 15,000 positions in the nation. Tr. 26.

      **A.**      **The ALJ Properly Considered the Third-Party Function Report**

On August 26, 2022, Anna Urtiaga, Mr. Armijo's girlfriend and caregiver, completed a Third-Party Function Report on Mr. Armijo's behalf. Tr. 263-70. Ms. Urtiaga indicated in that report that she spends five hours daily with Mr. Armijo; that she helps Mr. Armijo prepare his food, take his medications, shower, dress, complete household chores, and attend to his finances; and that Mr. Armijo is unable to go out alone. *Id.* Ms. Urtiaga indicated that Mr. Armijo's alleged impairments affect his ability to squat, bend, stand, walk, kneel, hear, stair climb, remember, complete tasks, concentrate, understand, and follow instructions. *Id.* Ms. Urtiaga indicated that Mr. Armijo was able to walk two blocks, requires a 15-30 minute rest before resuming, and uses a cane. *Id.*

      The ALJ explained as to Ms. Urtiaga' s statement that

> [c]onsideration was given to the Third-Party Function Report dated August 26, 2022, and completed by the claimant's friend, Anna Urtiaga (8E; Hearing Testimony). However, I have not provided articulation about evidence that is inherently neither valuable nor persuasive in accordance with 20 CFR 416.920b(c).

Tr. 24.

Mr. Armijo argues that the foregoing is insufficient and demonstrates that the ALJ failed to properly evaluate the Third-Party Function Report as she was required to do pursuant to various regulations. Doc. 14-2 at 9-13. Citing SSR 06-03p, Mr. Armijo argues that the law is clear that ALJs must consider evidence from "other sources," such as relatives of the claimant.[6] *Id.* Mr. Armijo argues that regulatory changes for claims filed after March 27, 2017, *i.e.,* that ALJs are no longer required to articulate how they consider evidence from nonmedical sources

---

[6] SSR 06-03p, *Considering Opinions and Other Evidence From Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decision on Disability by Other Governmental and Nongovernmental Agencies*, was rescinded effective March 27, 2017. *See* Federal Register Notice Vol. 82, No. 57, p. 15263, effective March 27, 2017. As such, this ruling is inapplicable to this case.

6

using the regulatory factors found in 20 C.F.R. § 419.920c,[7] do not absolve ALJs from otherwise articulating how they consider lay witness statements. *Id.* Mr. Armijo cites other regulations, 20 C.F.R. § 404.1529(c)[8] and SSR 16-3p,[9] which have not been amended and require ALJs to consider lay witness statements as relevant evidence. *Id.* Mr. Armijo argues that Ms. Urtiaga provided first-hand knowledge of Mr. Armijo's symptoms and functional limitations during the relevant period of time which amounts to probative and uncontroverted evidence the ALJ failed to sufficiently consider. *Id.* Finally, Mr. Armijo argues that the ALJ's error is not harmless because Ms. Urtiaga's statement contradicts the ALJ's step two "paragraph B" severity rating related to Mr. Armijo's ability to manage and adapt.[10] *Id.*

---

[7] *See* 20 C.F.R. § 416.920c, *How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017* (describing factors considered in evaluating persuasiveness of medical opinions, most importantly supportability and consistency, and other factors that include relationship with the claimant, length of treatment, frequency of examinations, purpose of treatment relationships, extent of treatment relationships, examining relationship, and specialization). 20 C.F.R. § 419.920c(a)-(c). This regulation states as to "[e]vidence from nonmedical sources" that "[w]e are not required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a) through (c) in this section." 20 C.F.R. § 419.920c(d). *See also* 20 C.F.R. § 416.920b, *How we consider evidence*, which provides, *inter alia*, that evidence that is inherently neither valuable nor persuasive does not require analysis about how such evidence was considered in a determination, *even under § 416.920c*. 20 C.F.R. § 416.920b(c) (emphasis added).

[8] Mr. Armijo incorrectly cites 20 C.F.R. § 404.1529(c) which applies to Title II claims. Mr. Armijo's claim is brought pursuant to Title XVI. 20 C.F.R. § 416.929, *How we evaluate symptoms, including pain*, explains, *inter alia*, that the Administration will consider all of a claimant's statements about symptoms, along with any descriptions medical or nonmedical sources provide about how symptoms affect a claimant's activities of daily living and ability to work, and that statements *which can reasonably be accepted as consistent with the objective medical evidence and other evidence will be taken into account* as explained in paragraph (c)(4) of this section[.] 20 C.F.R. § 416.929(c)(3) (emphasis added). 20 C.F.R. § 416.929(c)(4) provides in pertinent part that statements about limiting effects of symptoms will be evaluated in relation to the objective medical evidence.

[9] SSR 16-3, *Evaluation of Symptoms in Disability Claims*, describes the two-step process for evaluating a claimant's alleged symptoms, including pain. *See* SSR 16-3p, 2017 WL 5180304. At the first step, the ALJ "consider[s] whether there is an underlying medically determinable physical or mental impairment[ ] that could reasonably be expected to produce [the] individual's symptoms such as pain." *Id.* at *3. At the second step, after the ALJ has found such an impairment, the ALJ "evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit [the] individual's ability to perform work-related activities...." *Id.* The ALJ considers the record evidence, the claimant's statements, the medical and non-medical source statements, and a non-exhaustive list of factors provided in 20 C.F.R. § 416.929(c)(3).

[10] The ALJ assessed at step two that Mr. Armijo had no limitation in his ability to adapt and manage himself and explained, *inter alia*, that Mr. Armijo needed no reminders to manage his personal hygiene tasks independently[.] Tr. 18 (citing Mr. Armijo's Function Report). Mr. Armijo argues the ALJ's explanation contradicts Ms. Urtiaga's Third-Party Function Report wherein she stated that Mr. Armijo requires reminders to shower. Doc. 14-2 at 12.

7

The Commissioner contends the ALJ made multiple references to Ms. Urtiaga's statements in her decision which demonstrate the inaccuracy of Mr. Armijo's argument that the ALJ failed to sufficiently consider the Third-Party Function Report. Doc. 21 at 11. The Commissioner contends that the legal standard on which Mr. Armijo relies for consideration of "other source" evidence, SSR 06-03p, was rescinded when the regulations for evaluation medical evidence were revised in March 2017, and that under the revised regulations ALJs are not required to articulate how they consider statements from nonmedical sources. *Id.* The Commissioner contends it is undisputed that Ms. Urtiaga is not a medical source and that the ALJ, therefore, had no articulation requirement, heightened or otherwise, in considering the Third-Party Function Report. *Id.* The Commissioner further contends that Mr. Armijo's harmful error argument is misplaced because Mr. Armijo represented in his own function report that he did not need any special reminders to take care of his personal needs and grooming. *Id.*

Mr. Armijo filed his claim on November 26, 2021. Tr. 194-201. Regulations for claims filed after March 27, 2017, therefore, apply to the ALJ's consideration of the evidence in this claim. Pursuant to 20 C.F.R. § 416.913, evidence from nonmedical sources is

> any information or statement(s) from a nonmedical source (including you) about any issue in your claim. We may receive evidence from nonmedical sources either directly from the nonmedical source or indirectly, such as from forms we receive and our administrative records.

20 C.F.R. § 416.913(a)(4). Additionally, for claims filed after March 27, 2017, evidence is considered under §§ 416.920b and 416.920c.[11] 20 C.F.R. § 416.913(a). Accordingly, when evidence is deemed inherently neither valuable nor persuasive to the issue of whether a claimant is disabled, an analysis about how the evidence was considered will not be provided. 20 C.F.R.

---

[11] *See* fn. 7, *supra.*

§ 416.920b(c).[12]  An ALJ also is not required to articulate how she considered evidence from nonmedical source using the requirements in 20 C.F.R. 416.920c(a)-(c).[13]  20 C.F.R. 416.920c(d).  An ALJ is required to consider statements from nonmedical sources about how symptoms affect a claimant's activities of daily living and ability to work to the extent they can reasonably be accepted as consistent with the objective medical evidence.  *See* 20 C.F.R. § 416.929(c)(3);[14] *see also* SSR 16-3, 2017 WL 5180304 (explaining the two-step process for evaluating a claimant's alleged symptoms, including considering nonmedical source statements).[15]

    The Court finds the applicable regulations do not require the ALJ to articulate how she considered Ms. Urtiaga's Third-Party Function Report.  As such there is no error in the ALJ's evaluation of this nonmedical source statement.  That said and despite the brevity of the ALJ's explanation as to the nonmedical source statement, the Court finds that the ALJ's determination clearly demonstrates that she did consider Ms. Urtiaga's statements as she was required to do.  For instance, the ALJ discussed at step two that Ms. Urtiaga reported that Mr. Armijo's alleged mental impairments affected his ability to think, remember, and understand, and that Mr. Armijo had problems with task completion and concentration.  Tr. 17.  And when considering

---

[12] This evidence includes (1) decisions by other governmental agencies and nongovernmental entitles; (2) disability examiner findings made at a previous level of adjudication; and (3) statements on issues reserved to the Commissioners (these include statements of disability, whether or not you have a severe impairment, whether or not an impairment meets the duration requirement, whether or not your impairments meets a listing, statements about your residual functional capacity, statements about whether residual functional capacity prevents past relevant work, and statements about whether or not your disability continues or ends when conducting a continuing disability review).  20 C.F.R. § 416.920b(c)(1) – (c)(3).

[13] *See* fn. 7, *supra* for list of factors to be considered when evaluating medical opinion evidence pursuant to 20 C.F.R. § 416.920c(a)-(c).

[14] *See* fn. 8, *supra*.

[15] *See* fn. 9, *supra*.

Mr. Armijo's alleged symptoms, the ALJ discussed Mr. Armijo's hearing testimony and summarized Ms. Urtiaga's report as follows:

> In a Third-Party Function Report dated August 26, 2022, the claimant's friend, Anna Urtiaga, indicated that she assists the claimant with food preparation, taking his medications and generally motivating him. He remains able to shop for food and clothing, watches television and texts friends and family. He needs help with managing money and performing housework because he gets overwhelmed and has poor memory. He has no problems getting along with family, friends and neighbors yet is getting less and less social. Ms. Urtiaga also noted that the claimant has problems with walking, standing, bending and squatting and that he uses a cane (8E/1-8).

Tr. 20. The ALJ ultimately found that statements concerning the intensity, persistence and limiting effects of Mr. Armijo's symptoms were not entirely consistent with the medical evidence. *Id.* In support, the ALJ discussed in detail the objective medical evidence record identifying medical and other evidence that was inconsistent with Mr. Armijo's statements regarding his symptoms, as well as Ms. Urtiaga's Third-Party Function Report regarding the same. Tr. 20-23. Mr. Armijo does not dispute this evidence or point to probative or uncontroverted evidence the ALJ ignored.[16] *See Mays v. Colvin*, 739 F.3d 569, 575-76 (10th Cir. 2014) (the burden is on the claimant to point to probative evidence the ALJ ignored).

In sum, the Court finds the ALJ complied with the applicable regulations in her articulation of how she considered the nonmedical source statement from Ms. Urtiaga. The Court further finds that the ALJ sufficiently discussed Ms. Urtiaga's statements regarding Mr. Armijo's alleged symptoms and explained how they were inconsistent with the objective medical evidence. *See Clifton*, 79 F.3d at 1009-10 ("[t]he record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence" and "in addition to discussing the evidence supporting h[er] decision, the ALJ also must discuss the

---

[16] The only evidence Mr. Armijo cites relates to the ALJ's "paragraph B" findings at step two in which the ALJ determined Mr. Armijo had no limitation in his ability to manage and adapt. *See* fn. 10, *supra*.

uncontroverted evidence [s]he chooses not to rely upon, as well as significantly probative evidence [s]he rejects."). The Court, therefore, finds no error.

### B.     The ALJ Properly Evaluated Mr. Armijo's Need for a Cane

Mr. Armijo next argues that the ALJ failed to properly assess Mr. Armijo's need for a hand-held assistive device, specifically a cane, and the impact on his residual functional capacity. Doc. 14-2 at 14-16. Mr. Armijo argues that the record is abundant with references to his cane use and that the ALJ improperly concluded that there was no evidence of a medical need for an assistive device. *Id.* Mr. Armijo further argues that the ALJ's evaluation of the State agency nonexamining opinion evidence demonstrates the ALJ accepted Mr. Armijo's need for a cane but then failed to reflect this in the RFC without explanation.[17] *Id.*

The Commissioner contends that the evidence Mr. Armijo cites to support his cane use includes his hearing testimony and Ms. Urtiaga's statement, both of which the ALJ found inconsistent with the objective medical evidence, and two treatment notes from late November and December 2021which reflect Mr. Armijo's status prior to hip replacement surgery in March 2022. Doc. 21 at 4-10. The Commissioner contends that Mr. Armijo's use of a cane "at times" during the period immediately preceding hip replacement surgery does not establish that a cane was medically required for the requisite 12 months or longer. *Id.* The Commissioner contends

---

[17] On February 24, 2022, nonexamining State agency medical consultant Randal R. Reid, M.D., reviewed the medical evidence record at the initial stage of review. Tr. 72-74. Relevant here, Dr. Reid assessed that Mr. Armijo could perform light exertion work except that, *inter alia*, he could stand and/or walk for a total of 2 hours and that a hand-held assistive device was necessary for ambulation while considering surgery. *Id.* Dr. Reid explained that his RFC assessment "was for current and not projected" in light of impending surgery. *Id.* The ALJ found Dr. Reid's RFC assessment not persuasive and explained that although the pre-surgery need for an assistive device with ambulation was supported, Dr. Reid's assessment was inconsistent with post-surgical records. TR. 24.

On December 8, 2022, nonexamining State agency medical consultant Navjeet Singh, M.D., reviewed the medical evidence record at reconsideration. Tr. 93-95. Relevant here, Dr. Singh assessed that Mr. Armijo could perform light exertion work except that, *inter alia*, he could stand and/or walk 4 hours in an eight-hour workday. *Id.* Dr. Singh made no indication that a hand-held device was necessary for ambulation. *Id.* The ALJ found Dr. Singh's RFC assessment persuasive because it was supported by relevant evidence. Tr. 24.

11

that *post-surgical appointments* demonstrate that the hip surgery was uncomplicated, that Mr. Armijo was "doing well," that Mr. Armijo was participating in physical therapy, and that physical examinations do not indicate or reference the use of an assistive device and note that Mr. Armijo's "[g]ait is normal; the patient can walk several steps, then turn, and come back; balance is easy, the arms swing at the sides, and turns are accomplished smoothly" and that Mr. Armijo "exhibited normal range of motion, full (5/5) strength in all major muscle groups, and a normal gait." *Id.* (citing Tr. 576-77, 581, 699, 700, 716-17, 728-29). The Commissioner contends this constitutes substantial evidence to support the ALJ's findings that a cane was not medically necessary. *Id.*

As for the ALJ's evaluation of the State agency nonexamining opinion evidence, the Commissioner contends that Dr. Reid's RFC assessment and explanation was made in February 2022 before Mr. Armijo's hip surgery and demonstrate that his reference to the use of an assistive device was advised for Mr. Armijo's "current" state when Mr. Armijo was considering surgery. *Id.* The Commissioner contends that in the ALJ's evaluation of Dr. Reid's assessment, the ALJ explained that Dr. Reid's standing/walking limitation and his reference to Mr. Armijo's need for an assistive device, though supported at the time, were inconsistent with Mr. Armijo's post-surgical status which is why the ALJ found Dr. Reid's RFC assessment not persuasive. *Id.* The Commissioner further contends that the ALJ found Dr. Singh's December 2022 RFC assessment, which included standing and/or walking limitations without the need of an assistive device, more persuasive because it was consistent with clinical findings related to Mr. Armijo's post-surgical musculoskeletal status.

Social Security Ruling 96-9p provides that assistive devices such as canes and walkers will be found medically necessary when there is "medical documentation establishing the need

for a hand-held device to aid in walking or standing, and describing the circumstances for which it is needed." SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996). And a prescription is not required for a hand-held assistive device to be medically necessary, only "medical documentation establishing the need for the device." *Staples v. Astrue*, 329 F. App'x 189, 191 n. 1 (10th Cir. 2009).

Here, the record establishes that prior to hip surgery in March 2022, Mr. Armijo reported and medical providers noted that Mr. Armijo was using either a cane or crutches due to increased hip pain. Tr. 360, 362, 403, 428-30. The record, however, also establishes that after hip surgery, neither Mr. Armijo nor medical provides make any reference to his use of or need for an assistive device with ambulation. Notably, Mr. Armijo does not cite any post-surgical evidence to support his ongoing need for a cane that the ALJ failed to consider.

Here, the ALJ's determination demonstrates she considered Mr. Armijo's cane use. For instance, at step three the ALJ specifically discussed that

> [t]hough records document the claimant's history of left hip arthroplasty in March 2022, clinical findings routinely confirm normal gait and there is no evidence of a medical need for an assistive device following surgical intervention and recovery (6F/10; 7F/8; 7F/24). Examination of the lower extremities likewise confirms no deformity, normal range of motion, no swelling, effusions, crepitus, or tenderness, no signs of muscle atrophy, and 5/5 strength in all major muscle groups (17F/24). As such, the claimant's lower extremity impairments do not meet or medially equal the medical criteria of listing 1.17[18] or 1.18.[19]

Tr. 19. Mr. Armijo does not dispute the ALJ's step three finding. Additionally, at step four, the ALJ discussed Mr. Armijo's pre-surgery cane use, but found that post-surgical records "fail[ed] to document ongoing musculoskeletal complaints or abnormal findings on examination

---

[18] Listing 1.17 – *Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint.* Tr. 19.

[19] Listing 1.18 – *Abnormality of a major joint in any extremity.*

13

correlating to the claimant's hearing testimony regarding a limited capacity for standing and walking," and that updated primary care physician records were "generally silent on musculoskeletal complaints and document denial of such symptoms." Tr. 20-21. The ALJ also explained that Mr. Armijo's allegations of disabling functional limitations post total hip replacement "are simply not supported by the record consistently showing 5/5 muscle strength, no restriction in range of motion or instability, and no welling, tenderness, or crepitus, or any other musculoskeletal or neurological abnormalities." Tr. 23. The record supports these findings.

As for the ALJ's evaluation of the opinion evidence, the Court can follow the ALJ's reasoning in which she explained that Dr. Reid's standing and walking assessment, though supported by reference to the need for an assistive device, "was inconsistent with records received following initial review, which document a successful left hip arthroplasty resulting in denial of body aches, joint pain, and muscle stiffness with generally normal findings on comprehensive musculoskeletal examination[.]" Tr. 24. The Court, therefore, finds no inconsistency between the ALJ's evaluation of Dr. Reid's opinion and her RFC assessment.

In sum, the Court finds that ALJ properly considered Mr. Armijo's need for a hand-held assistive device and that the ALJ's RFC is supported by substantial evidence. The Court, therefore, finds no error.

## IV.  Recommendation

For all of the reasons stated above, the Court finds that Mr. Armijo's Motion is not well taken. The Court, therefore, recommends that the Motion be **DENIED.**

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**